IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GABRIEL VASHON SEAY                     :

                                        :

          v.                            :    Civil Action No. DKC 15-3367
                                             Criminal Case No. DKC 14-0614
                                        :

UNITED STATES OF AMERICA                :

                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion to
vacate sentence filed by Petitioner Gabriel Vashon Seay.  (ECF
No. 41).  The Court ruled on two of the issues[1] identified in the
motion to vacate previously, (ECF No. 69, at 89-91), and the
remaining issue is whether Petitioner received ineffective
assistance of counsel when counsel advised Petitioner that the
motion to suppress was unlikely to succeed.  For the following
reasons, the motion to vacate will be denied.

I.   **Background**

     A.   **Factual Background**

On February 12, 2014, law enforcement officers stopped
Petitioner for failing to use his left turn signal when he
pulled out of a gas station.  (ECF No. 69, at 6).  During the
stop, Petitioner informed the officers that he did not have a
valid license, and the officers found an outstanding warrant for

_____
          [1] At the hearing, the court found that Petitioner had not
met his burden to show either that he had asked his attorney to
file an appeal or that he was coerced into taking the plea.

Petitioner from Dougherty County, Georgia. (ECF No. 28-1, at 1). Officers arrested petitioner for the traffic violation and transported Petitioner to the police station to determine whether extradition was pending on the outstanding warrant. (ECF No. 55-2, at 5). After bringing Petitioner to the police station and before transporting him to the Department of Corrections, officers searched Petitioner and found 26.95 grams of cocaine base on his person. (ECF No. 28-1, at 1).

Law enforcement officers then went to Petitioner's apartment building.[2] The officers took Petitioner's keys and key fob from him during the arrest and may have used the fob to enter his apartment building.[3] (ECF Nos. 21; 55, at 4; 55-2, at 5).

A K-9 unit was brought onto the floor where Petitioner's apartment was located, it sniffed the door, and alerted to the

_____

[2] Petitioner has noted that his residence was a condominium and not an apartment. (ECF No. 80, at 1). Because this distinction does not affect the Fourth Amendment analysis, Petitioner's residence will be referred to as an apartment which is how the residence has been identified throughout the proceedings. Furthermore, there is no evidence that Petitioner was the "owner" as opposed to occupant. He testified that he did not live there, but the apartment belonged to someone else. (ECF No. 69 at 8-9).

[3] It is not entirely clear from the record that the officers used the fob to enter at the time of the dog sniff. The sequence of events recited in the search warrant affidavit and application might reveal that an employee who verified that Petitioner had been seen at the apartment in the prior 30 days let them in.

presence of drugs. (ECF No. 55-2, at 5-6). Officers subsequently obtained a warrant and searched Petitioner's residence. In addition to a pistol, cash, a scale, and other items suggestive of drug trafficking, they found: "87.35 grams cocaine base; 452.36 grams cocaine HCl; 331.9 grams of 3,4-Methylenedioxymethcathinone (Methylene), a Schedule I controlled substance; 32.96 grams heroin; and 31.74 grams marijuana." (ECF No. 28-1, at 1).

On April 1, 2014, Petitioner was charged in a criminal complaint with possession with intent to distribute controlled substances. (ECF No. 1). On October 29, 2014, Petitioner's counsel moved to suppress the evidence found from the initial stop and the subsequent search. (ECF No. 21). On January 20, 2015, Petitioner pled guilty to an Information charging possession with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 841 and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924. (ECF No. 26). On March 30, Petitioner was sentenced to 144 months of imprisonment. (ECF No. 38).

Between being charged and pleading guilty, Petitioner discussed his case and the motion to suppress with his counsel on multiple occasions. Counsel showed Petitioner the discovery and his independent research about the stop. Counsel advised

Petitioner to take a plea offer and told Petitioner that the motion to suppress was unlikely to succeed. (ECF No. 69, at 14, 33-34, 51-58, 63-65).

**B.    Procedural Background**

On November 3, 2015, Petitioner filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255 asserting ineffective assistance of counsel. (ECF No. 41). Petitioner claimed his counsel was ineffective for failing to file an appeal when requested to do so, for failing to investigate the initial stop and search,[4] and for coercing Petitioner into accepting a plea. The Government responded to the initial motion to vacate on March 4, 2016. In a supplement to his motion to vacate filed on July 19, Petitioner pointed out that in *Florida v. Jardines*, 569 U.S. 1 (2013), the Supreme Court of the United States held that the use of a drug-sniffing dog on a defendant's porch was a search. Petitioner also claimed that "*Jardines* has been extended to the hallway outside an apartment's door" by the United States Court of Appeals for the Seventh Circuit. (ECF No. 55, at 5).

---

[4] The Government did not contend that any argument related to the search of his apartment was procedurally barred. It appears that the petition only claimed ineffective assistance of counsel related to the initial seizure and not the subsequent search. The Government, however, chose not to raise any procedural bar, and the court will not do so *sua sponte*.

On September 2, 2016, an evidentiary hearing was held to determine the merits of the motion to vacate. At the hearing, the court rejected the ineffective assistance of counsel claim as it related to a failure to file a requested appeal, concluding that Petitioner had not met his burden to show that he had asked his attorney to challenge his sentence. The court also rejected the ineffective assistance claim as it related to the allegation that Petitioner was coerced into taking the plea. The court reserved ruling on whether Petitioner had shown ineffective representation by counsel based on his advice as to the wisdom of litigating the suppression issue, as opposed to taking the plea offer. (ECF No. 69, at 89-91). In a follow-up telephone conference, the parties were ordered to brief whether counsel was ineffective for advising Petitioner that the motion to suppress was unlikely to succeed.

## II. Standard of Review

To prevail on a claim of ineffective assistance of counsel, a petitioner needs first to show that "counsel's efforts were objectively unreasonable when measured against prevailing professional norms." *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005). "Where, as here, a [petitioner] is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of

competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In evaluating objective unreasonableness, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

In addition, a petitioner must show prejudice meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For a guilty plea, this requires showing that with proper legal counsel, a petitioner "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

In a motion to vacate pursuant to 28 U.S.C. § 2255 based on ineffective assistance of counsel, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (Strickland, 466 U.S. at 190). In other words,

"[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

## III. Analysis

The ineffective assistance of counsel claim is based on counsel's advice to Petitioner that the motion to suppress was unlikely to succeed. The advice implicates two different issues of Fourth Amendment jurisprudence. Petitioner first argues that his initial stop was pretextual. (ECF No. 41, at 5-8). As will be discussed, regardless of whether the initial stop was pretextual, however, the exclusionary rule would not bar the admission of drugs seized from Petitioner's person or home. Petitioner next argues that bringing a drug-sniffing dog into his apartment complex to sniff right outside his door violated his Fourth Amendment rights and, to the extent that the sniff information was necessary to a showing of probable cause, invalidated the search of the apartment.

### A. Any problems with the initial stop did not affect the admissibility of the drugs later recovered.

Petitioner was stopped for turning out of a gas station without a turn signal. Petitioner contends the initial stop was pretextual. (ECF No. 55, at 2-4). At the evidentiary hearing on the motion, there was a discussion as to whether turning out of the gas station without a turn signal was a violation of

Maryland traffic law or whether there was an exception for turning out of a private residence. (ECF No. 69, at 40, 71).

Ultimately, this issue is immaterial to the ineffective assistance of counsel claim. Petitioner faced criminal prosecution for a series of drug offenses and not a traffic violation. Whether or not Petitioner violated Maryland traffic law would only be relevant to this case if the evidence found subsequent to the initial stop could have been suppressed. Regardless of the legality of the initial stop, neither the evidence found from the search of his person nor evidence found from the search of his residence would have been excluded.

A stop is lawful and "the evidence thereby discovered admissible," if the law enforcement officers had "probable cause to believe that [P]etitioner[]had violated the traffic code." *Whren v. United States*, 517 U.S. 806, 819 (1996). And sometimes, reasonable suspicion supported by articulable facts that criminal activity is underway suffices. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Moreover, even if officers are mistaken as to the actual law, the evidence found from the stop would be admissible so long as the stop was based on a "reasonable mistake of law." *Hein v. North Carolina*, 135 S.Ct. 530, 536 (2014). Given the obscurity of the issue, a mistake about whether a driver has to use a turn signal when leaving

private property does not appear to be an unreasonable mistake. Petitioner does not suggest otherwise.

In addition, an outstanding warrant existed for Petitioner's arrest. At the time of his arrest and up until three days prior to his plea, every court to examine the issue had concluded that if an unlawful stop led to the discovery of an outstanding warrant, evidence found from a search incident to arrest on the warrant was admissible absent flagrant police misconduct in initiating the stop. *See People v. Brendlin*, 195 P.3d 1074, 1076 (Cal. 2008) ("Case law from other state and federal courts uniformly holds that the discovery of an outstanding arrest warrant prior to a search incident to arrest constitutes an intervening circumstance that may — and, in the absence of purposeful or flagrant police misconduct, will — attenuate the taint of the antecedent unlawful traffic stop.") (emphasis omitted).[5] Here, Petitioner does not allege any flagrant police misconduct, and there does not appear to have been any. Therefore, the existence and discovery of the warrant attenuated the stop from the discovery of the drugs. *See Strieff*, 136 S.Ct. at 2062-63.

---

[5] In *State v. Strieff*, 357 P.3d 532 (2015), the Utah Supreme Court broke with other courts and determined that the finding of a warrant was not an intervening circumstance and therefore evidence found from the arrest was not admissible under the attenuation exception to the Fourth Amendment. *Id.* at 544-45. The decision was overturned in *Utah v. Strieff,* 136 S.Ct. 2056 (2016).

Regardless of the propriety of the initial stop, it did not taint any subsequent police actions and did not provide a reason to suppress.

**B.    Petitioner has not shown that counsel's assessment of the suppression issue was not within the range of professional competence.**

In *Jardines*, Justice Scalia wrote for the Court and ultimately held that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment."  569 U.S. at 12-13.  The building blocks to that conclusion were that (1) the porch of the home is within the "curtilage," an area considered part of the home for Fourth Amendment purposes, (2) the police entered this constitutionally protected area, and (3) they did so through an unlicensed physical intrusion because bringing a trained dog exceeded the implied license.    The majority opinion explicitly did not find that the investigation violated Jardines' expectation of privacy under *Katz v. United States*, 389 U.S. 347 (1967).    Only the two justices who joined Justice Kagan's concurring opinion would also find a violation of the expectation of privacy.

**1.    Petitioner has failed to identify any property right that law enforcement officers traversed which would have enabled him to prevail on the motion to suppress.**

Petitioner contends that law enforcement officers committed a trespass-based search when law enforcement officers used a dog

to sniff for drugs from the common area outside of his apartment door. Petitioner argues that any evidence acquired after that action would have been subject to the exclusionary rule. (ECF No. 70, at 3-4). As a prerequisite to a trespass-based search that would entitle a defendant to suppress evidence, a defendant must have a property interest in the area police enter. *See Jardines*, 569 U.S. at 5-6. Otherwise, even if a trespass did occur, it would not violate the defendant's Fourth Amendment rights and thus the defendant could not object to the search. *See Simmons v. United States*, 390 U.S. 377, 389 (1968) ("However, we have also held that rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.").

Petitioner cites to *United States v. Breza*, 308 F.3d 430, 435 (4th Cir. 2002), for the proposition that the hallway was within the curtilage. There, the United States Court of Appeals for the Fourth Circuit identified the standard to be applied to determine whether an area is within the curtilage: proximity to the home, whether the area is within an enclosure surrounding the home, the use of the area, and steps taken to shield the area from the view of others. The area under consideration in *Breza* was a vegetable garden. Petitioner also cites *United States v. Hill*, 776 F.3d 243 (4th Cir. 2015). (ECF No. 85.) That

case dealt with a canine sniff inside the apartment where a person on supervised release lived in January 2013 (prior to *Jardines*), without a warrant or consent. The court considered whether the good faith exception to the exclusionary rule would apply based on pre-*Jardines* authority. Even before the Supreme Court decision in *Jardines*, the Fourth Circuit noted that there was no case "that approved of a warrantless dog sniff inside a home." 776 F.3d at 250. That case, however, does not say that a warrantless dog sniff from a common hallway of an apartment building violates the Fourth Amendment.

As discussed more fully later, while courts are grappling with whether a dog sniff in a common hallway implicates a resident's reasonable expectation of privacy, there is little movement to expand the concept of curtilage. In *United States v. Jackson*, 728 F.3d 367, 373-74 (4th Cir. 2013), Judge Neimeyer reviewed the criteria for determining curtilage in a case involving a trash pull just off the back patio of an apartment:

> The test used to determine the boundaries of a home's curtilage is not "a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions." *United States v. Dunn*, 480 U.S. 294, 301 (1987). In *Dunn*, the Supreme Court instructed "that curtilage questions should be resolved with particular reference to four factors: [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area

> is put, and [4] the steps taken by the
> resident to protect the area from
> observation by people passing by." *Id.* At
> the same time, though, the Court cautioned
> that "these factors are useful analytical
> tools only to the degree that, in any given
> case, they bear upon the centrally relevant
> consideration — whether the area in question
> is so intimately tied to the home itself
> that it should be placed under the home's
> 'umbrella' of Fourth Amendment protection."
> *Id.; see also Oliver v. United States*, 466
> U.S. 170, 182 n.12 (1984) (describing the
> "conception defining the curtilage . . . as
> the area around the home to which the
> activity of home life extends").

Even more tellingly, in *United States v. Legall*, 585 Fed.Appx 4, 5 (4th Cir. 2014)(unpublished) (per curiam), the Fourth Circuit rejected a *Jardines* challenge to a dog sniff in a hotel hallway: "[W]e find that the common hallway of the hotel was not within any curtilage of the hotel room."[6]

Petitioner cannot show that the common hallway was part of the curtilage of the apartment he occupied. The area law enforcement officers entered did not belong to Petitioner. Petitioner had no right to control that area. He had no right to exclude people from the area. He had no right to improve that area. From all that appears, the hallway was used by other tenants and their visitors on a regular basis. Even if the use of the key fob for entry meant that the officers were trespassers, the area is not necessarily converted to curtilage.

---

[6] The court also found that the dog sniff did not infringe any legitimate expectation of privacy.

Therefore, Petitioner cannot argue for the suppression of evidence based on a search in violation of his property rights.

### 2. Petitioner has failed to establish that, at the time of his guilty plea, courts had recognized that a dog sniff from a common hallway infringed the occupant's reasonable expectation of privacy.

Furthermore, at least as of the time of Petitioner's guilty plea, it remained reasonable to conclude that this dog sniff did not infringe Petitioner's reasonable expectation of privacy. Most courts, including the Fourth Circuit, prior to *Jardines*, "held that canine sniffs used only to detect the presence of contraband are not Fourth Amendment searches." *United States v. Brock*, 417 F.3d 692, 696 (7th Cir. 2005) (collecting cases), *abrogated by Florida v. Jardines*, 569 U.S. 1 (2013), as *recognized in United States v. Gutierrez*, 760 F.3d 750 (7th Cir. 2014); *United States v. Branch*, 537 F.3d 328, 335-36 (4th Cir. 2008) ("[A] dog sniff is not a search within the meaning of the Fourth Amendment[.]"). These courts based their conclusion on a combination of three Supreme Court cases.

First, in *United States v. Place*, 462 U.S. 696, 707 (1983), the Court concluded that a drug-sniffing dog alerting to the presence of drugs in a person's luggage at an airport did not violate a reasonable expectation of privacy and thus qualify as a search because "canine sniff is *sui generis*" in that it "discloses only the presence or absence of narcotics, a

contraband item." Then, in *United States v. Jacobsen*, 466 U.S. 109, 124 n.24 (1984), the Court elaborated on its holding in *Place* and explained that "the reason [the drug-sniff] did not intrude upon any legitimate privacy interest was that the governmental conduct could reveal nothing about noncontraband items." Some twenty-years later, the Court concluded that a dog sniff of a vehicle during a traffic stop was not a search because "governmental conduct that *only* reveals the possession of contraband 'compromises no legitimate privacy interest.'" *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (emphasis in original) (quoting *Jacobsen*, 466 U.S. at 123). Reading these precedents, lower courts concluded that the use of a drug-sniffing dog outside of a hotel room, railway sleeper car, or a locked bedroom did not violate a reasonable expectation of privacy. *See, e.g.*, *United States v. Whitehead*, 849 F.2d 849, 855 (4th Cir. 1988) (holding that the use of a drug-sniffing dog outside a train's sleeper car was not a search); *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997) (holding that the use a drug-sniffing dog outside a hotel room was not a search); *Brock*, 417 F.3d at 697 (holding that the use of a drug-sniffing dog outside of a bedroom from the common area of the house was not a search when police had the defendant's roommates' consent to be in the common area).

From the Court's decision in *Place* to its decision in *Jardines*, five courts faced the question of whether the use of a drug-sniffing dog in an apartment building constituted a search as a violation of a reasonable expectation of privacy. In *United States v. Thomas*, 757 F.2d 1359, 1367 (2$^d$ Cir. 1985), the United States Court of Appeals for the Second Circuit held that the use of drug-sniffing dog in the common area of an apartment was a search "[b]ecause of defendant['s] . . . heightened expectation of privacy inside his dwelling[.]" The Supreme Court of Nebraska also recognized a legitimate expectation of privacy in the hallways of an apartment and found that a canine sniff violated that expectation. *State v. Ortiz*, 600 N.W. 805, 820 (Neb. 1999).

In *Fitzgerald v. State*, 384 Md. 484, 487 (2004), however, the Court of Appeals of Maryland held that a dog's "sniff of an apartment door from a common area is a . . . non-search under the Fourth Amendment." The New York Court of Appeals and the United States District Court for the District of Colorado also held that a sniff of an apartment door from the hallway outside the apartment did not violate a reasonable expectation of privacy. *United States v. Broadway*, 580 F.Supp.2d 1179, 1190 (D.Colo. 2008); *People v. Dunn*, 564 N.E.2d 1054 (N.Y. 1990).

In short, it appears most courts, including the Fourth Circuit, prior to *Jardines* concluded that a dog sniffing for

drugs did not violate a reasonable expectation of privacy and therefore was not a search, and courts dealing with facts similar to Petitioner's case were evenly split about whether the government action constituted a search. Thus, prior to *Jardines*, it would be difficult to see how counsel's advice that Petitioner was unlikely to win his suppression hearing was wrong and even more difficult to see how the advice was objectively unreasonable.

Therefore, Petitioner's argument hinges on the notion that *Jardines* changed this calculus. *Jardines*, however, only dealt with a property-based view of the Fourth Amendment, holding that a search occurred because police committed "an unlicensed physical intrusion." 569 U.S. at 7. The Court stated that it "need not decide whether the officers' investigation of Jardines' home violated his expectation of privacy under *Katz*." *Id.* at 11. Therefore, the Court's decision in *Jardines* provides no support for Petitioner's privacy-based argument.

Nonetheless, in *Jardines*, Justice Kagan joined by Justices Ginsburg and Sotomayor concurred, stating that the case could also have been decided on privacy grounds and that *Kyllo v. United States*, 533 U.S. 27 (2001), "already resolved" that the use of a drug-sniffing dog to determine the contents of a home was a search regardless of whether a trespass was committed. *Jardines*, 569 U.S. at 14 (Kagan, J. concurring). Although the

concurrence is relevant, the concurrence's only effect was to suggest an interpretation of *Kyllo* that had already been rejected by numerous courts.

For example, the Court of Appeals of Maryland had previously stated that "[e]ven a perfunctory reading of *Kyllo* reveals that its standard does not apply to dog sniffs." *Fitzgerald*, 384 Md. at 499. Similarly, the Seventh Circuit had explained, "it was essential to *Kyllo's* holding that the imaging device was capable of detecting not only illegal activity inside the home, but also lawful activity, including such intimate details as 'at what hour each night the lady of the house takes her daily sauna and bath.'" *Brock*, 417 F.3d at 696 (quoting *Caballes*, 543 U.S. at 410 (quoting Kyllo, 533 U.S. at 38)). The *Jardines* concurrence did not overturn these or any other decision.

To be certain, *Jardines* has breathed new life into the argument that the use of a dog in an apartment hallway is a search. In two cases, one decided after the guilty plea in this case and one decided before the guilty plea, courts have held that the use of a drug-sniffing dog in the common area of an apartment was a search. *United States v. Whitaker*, 820 F.3d 849 (7th Cir. 2016); *State v. Kono*, No. CR120264061, 2014 WL 7462049 (Conn.Super.Ct. Nov. 18, 2014), *aff'd*, 152 A.3d 1 (Conn. 2016). It may be true that eventually the Supreme Court will hold the

use of a drug-sniffing dog in the common area of an apartment is a search. Nonetheless, based on the weight of authority suggesting that the use of a drug-sniffing dog did not violate a reasonable expectation of privacy, Petitioner has failed to prove "the gross incompetence of [his] attorney[]" and therefore has not met his burden under *Strickland*. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

**C. Counsel's evaluation of the motion to suppress was not objectively unreasonable.**

Counsel advised Petitioner that Petitioner was unlikely to prevail on his motion to suppress. This motion hinged on whether the use of a drug-sniffing dog in an apartment hallway violates a reasonable expectation of privacy protected by the Fourth Amendment or was within the curtilage of the apartment. In the end, lower courts have split on this question, and, therefore, Petitioner has not met the burden under *Strickland* to show that counsel's actions approached professional incompetence.

In sum, counsel's advice that the motion to suppress was unlikely to succeed "was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771. The evidence would not have been suppressed even if the initial stop was found to be pretextual. The evidence would not have been suppressed because of any trespass to Petitioner's home. The

evidence may or may not have been suppressed based on the use of the drug-sniffing dog. Even combining all the possible reasons the evidence might have been suppressed, Petitioner's plea was "based on reasonably competent advice" and is "not open to attack on the ground that counsel may have misjudged the admissibility of the" drugs seized from Petitioner. *Id.* at 770.

Because counsel's performance did not fall below an objectively reasonable level, prejudice does not need to be evaluated. Accordingly, the motion to vacate is denied.

## IV. Certificate of Appealability

"A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). The standard is satisfied by demonstrating that reasonable jurists would find this court's assessment of the constitutional claims presented debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).

Upon its review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it declines to issue a certificate of appealability.

## V.  Conclusion

For the foregoing reasons, the motion to vacate sentence filed by Petitioner Gabrielle Seay will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
